UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


MICHAEL DUNBAR,

                    Petitioner,

v.                                        Case No. 3:15-cv-1040-J-34PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,
                    Respondents.

_____

**ORDER**

**I. Status**

　　Petitioner Michael Dunbar, an inmate of the Florida penal
system, initiated this action on August 20, 2015, by filing a pro
se Petition for Writ of Habeas Corpus (Doc. 1) under 28 U.S.C. §
2254. He filed an Amended Petition (Doc. 8) on June 9, 2016, and a
Second Amended Petition (Amended Petition; Doc. 13) on December 5,
2016. In the Amended Petition, Dunbar challenges a 2008 state court
(Duval County, Florida) judgment of conviction for attempted first
degree murder. Respondents have submitted a memorandum in
opposition to the Amended Petition. See Respondents' Amended Answer
to Petition for Writ of Habeas Corpus (Response; Doc. 28) with
exhibits (Resp. Ex.). On October 13, 2016, the Court entered an
Order to Show Cause and Notice to Petitioner (Doc. 10), admonishing
Dunbar regarding his obligations and giving Dunbar a time frame in

which to submit a reply. Dunbar, with the benefit of counsel,[1] submitted a brief in reply on December 1, 2017. <u>See</u> Reply to the Respondents' Response to Mr. Dunbar's Petition for Writ of Habeas Corpus (Reply; Doc. 36). This case is ripe for review.

## II. Procedural History

On September 26, 2007, the State of Florida charged Dunbar with attempted first degree murder (count one), and possession of a firearm by a convicted felon (count two). <u>See</u> Resp. Ex. A at 11-12, Information; <u>see also</u> https://core.duvalclerk.com, Case No. 16-2007-CF-013715-AXXX-MA (Fla. 4th Cir. Ct.), docket entries 9, 10, Information. Dunbar proceeded to a jury trial on count one in February 2008, at the conclusion of which, on February 28, 2008, the jury found him guilty, as charged, with a specific finding that he discharged a firearm causing great bodily harm to another during the commission of the offense. <u>See</u> <u>id.</u> at 78-79, Verdict; Resp. Exs. B; C, Transcript of the Jury Trial (Tr.) at 765. On April 11, 2008, the court sentenced Dunbar to life imprisonment. <u>See</u> Resp. Ex. A at 96-101, Judgment, 114-53, Transcript of the Sentencing Hearing.

On direct appeal, Dunbar, with the benefit of counsel, filed an initial brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967). <u>See</u> Resp. Ex. D. Dunbar filed a pro se brief, arguing that

---

[1]     Counsel filed a Notice of Appearance (Doc. 32) on September 25, 2017.

the trial court erred when it denied his motion for judgment of acquittal. <u>See</u> Resp. Ex. E. On April 27, 2009, the appellate court affirmed Dunbar's conviction and sentence without issuing a written opinion, <u>see</u> Resp. Ex. F, and issued the mandate on May 26, 2009, <u>see</u> Resp. Ex. G.

On July 23, 2009, Dunbar filed a pro se motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 motion). <u>See</u> Resp. Ex. H at 1-18. In his request for post-conviction relief, Dunbar asserted that counsel (Valerie Limoge) was ineffective because she failed to challenge the investigatory stop (ground one), and properly impeach Officer N.A. Rodgers' testimony (ground two). The circuit court denied his Rule 3.850 motion on October 28, 2010. <u>See</u> <u>id.</u> at 19-105. On July 15, 2011, the appellate court affirmed the circuit court's denial of post-conviction relief per curiam, <u>see</u> Resp. Ex. J, and issued the mandate on August 10, 2011, <u>see</u> Resp. Ex. K.

On December 19, 2011, Dunbar filed a pro se motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800 (Rule 3.800 motion). <u>See</u> Resp. Ex. L. On July 2, 2014, the circuit court denied the Rule 3.800 motion. <u>See</u> Resp. Ex. M. The appellate court affirmed the circuit court's denial of the motion per curiam on November 25, 2014, <u>see</u> Resp. Ex. O, and issued the mandate on December 23, 2014, <u>see</u> Resp. Ex. P.

On or about May 1, 2013, Dunbar filed a pro se petition for writ of habeas corpus, <u>see</u> Resp. Ex. Q, and on November 25, 2014

filed an amended petition, <u>see</u> Resp. Ex. R at 1-18. In the petitions, Dunbar asserted that the trial court lacked subject matter jurisdiction, and the judgment is a nullity because the Information omitted one or more of the essential elements of the crime of attempted first degree murder. On May 7, 2015, the circuit court stated that Dunbar should have raised the claim in a Rule 3.850 motion, and denied it as procedurally barred. <u>See</u> <u>id.</u> at 19-29. On appeal, Dunbar filed a pro se brief, <u>see</u> Resp. Ex. S, and the State filed an answer brief, <u>see</u> Resp. Ex. T. The appellate court affirmed the circuit court's denial per curiam on September 2, 2015, <u>see</u> Resp. Ex. U, and later denied his motion for rehearing, <u>see</u> Resp. Exs. V; W. The mandate issued on November 18, 2015. <u>See</u> Resp. Ex. X.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."

4

Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S.Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Dunbar's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S.Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly

deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S.Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States;" or (2) "was based on an
unreasonable determination of the facts in light of the evidence
presented in the State court proceeding." 28 U.S.C. § 2254(d);
Richter, 562 U.S. at 97-98. As the Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal
> review for claims of state courts' erroneous
> legal conclusions. As explained by the Supreme
> Court in Williams v. Taylor, 529 U.S. 362, 120
> S. Ct. 1495, 146 L.Ed.2d 389 (2000), §
> 2254(d)(1) consists of two distinct clauses: a
> "contrary to" clause and an "unreasonable
> application" clause. The "contrary to" clause
> allows for relief only "if the state court
> arrives at a conclusion opposite to that
> reached by [the Supreme] Court on a question
> of law or if the state court decides a case
> differently than [the Supreme] Court has on a
> set of materially indistinguishable facts."
> Id. at 413, 120 S. Ct. at 1523 (plurality
> opinion). The "unreasonable application"
> clause allows for relief only "if the state
> court identifies the correct governing legal
> principle from [the Supreme] Court's decisions
> but unreasonably applies that principle to the
> facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal
> review for claims of state courts' erroneous
> factual determinations. Section 2254(d)(2)
> allows federal courts to grant relief only if
> the state court's denial of the petitioner's
> claim "was based on an unreasonable
> determination of the facts in light of the
> evidence presented in the State court
> proceeding." 28 U.S.C. § 2254(d)(2). The
> Supreme Court has not yet defined §
> 2254(d)(2)'s "precise relationship" to §
> 2254(e)(1), which imposes a burden on the
> petitioner to rebut the state court's factual
> findings "by clear and convincing evidence."
> See Burt v. Titlow, 571 U.S. ---, ---, 134 S.
> Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord
> Brumfield v. Cain, 576 U.S. ---, ---, 135 S.
> Ct. 2269, 2282, 192 L.Ed.2d 356 (2015).

> Whatever that "precise relationship" may be,
> "'a state-court factual determination is not
> unreasonable merely because the federal habeas
> court would have reached a different
> conclusion in the first instance.'"[2] <u>Titlow</u>,
> 571 U.S. at ---, 134 S. Ct. at 15 (quoting
> <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct.
> 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016), <u>cert</u>.
<u>denied</u>, 137 S.Ct. 2298 (2017). Also, deferential review under §
2254(d) generally is limited to the record that was before the
state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v.
Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language in §
2254(d)(1)'s "requires an examination of the state-court decision
at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas
relief for prisoners whose claims have been adjudicated in state
court." <u>Burt v. Titlow</u>, 134 S.Ct. 10, 16 (2013). "Federal courts
may grant habeas relief only when a state court blundered in a
manner so 'well understood and comprehended in existing law' and
'was so lacking in justification' that 'there is no possibility
fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338
(quoting <u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to
be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to

---

[2]     The Eleventh Circuit has described the interaction
between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." <u>Clark v.
Att'y Gen., Fla.</u>, 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), <u>cert</u>.
<u>denied</u>, 137 S.Ct. 1103 (2017).

the extent that Dunbar's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court

with powers of discretionary review), thereby
alerting that court to the federal nature of
the claim. Duncan, supra, at 365-366, 115
S.Ct. 887; O'Sullivan v. Boerckel, 526 U.S.
838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1
(1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state

remedies results in a procedural default which raises a potential

bar to federal habeas review. The United States Supreme Court has

explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the
> constitutionality of a state prisoner's
> conviction and sentence are guided by rules
> designed to ensure that state-court judgments
> are accorded the finality and respect
> necessary to preserve the integrity of legal
> proceedings within our system of federalism.
> These rules include the doctrine of procedural
> default, under which a federal court will not
> review the merits of claims, including
> constitutional claims, that a state court
> declined to hear because the prisoner failed
> to abide by a state procedural rule. See,
> e.g., Coleman,[3] supra, at 747–748, 111 S.Ct.
> 2546; Sykes,[4] supra, at 84–85, 97 S.Ct. 2497.
> A state court's invocation of a procedural
> rule to deny a prisoner's claims precludes
> federal review of the claims if, among other
> requisites, the state procedural rule is a
> nonfederal ground adequate to support the
> judgment and the rule is firmly established
> and consistently followed. See, e.g., Walker
> v. Martin, 562 U.S. --, --, 131 S.Ct. 1120,
> 1127–1128, 179 L.Ed.2d 62 (2011); Beard v.
> Kindler, 558 U.S. --, --, 130 S.Ct. 612,
> 617–618, 175 L.Ed.2d 417 (2009). The doctrine

---

[3]     Coleman v. Thompson, 501 U.S. 722 (1991).

[4]     Wainwright v. Sykes, 433 U.S. 72 (1977).

> barring procedurally defaulted claims from
> being heard is not without exceptions. A
> prisoner may obtain federal review of a
> defaulted claim by showing cause for the
> default and prejudice from a violation of
> federal law. See Coleman, 501 U.S., at 750,
> 111 S.Ct. 2546.

Martinez v. Ryan, 132 S.Ct. 1309, 1316 (2012). Thus, procedural

defaults may be excused under certain circumstances.

Notwithstanding that a claim has been procedurally defaulted, a

federal court may still consider the claim if a state habeas

petitioner can show either (1) cause for and actual prejudice from

the default; or (2) a fundamental miscarriage of justice. Ward v.

Hall, 592 F.3d 1144, 1157 (11th Cir. 2010); In Re Davis, 565 F.3d

810, 821 (11th Cir. 2009). In order for a petitioner to establish

cause,

> the procedural default "must result from some
> objective factor external to the defense that
> prevented [him] from raising the claim and
> which cannot be fairly attributable to his own
> conduct." McCoy v. Newsome, 953 F.2d 1252,
> 1258 (11th Cir. 1992) (quoting Carrier, 477
> U.S. at 488, 106 S.Ct. 2639).[5] Under the
> prejudice prong, [a petitioner] must show that
> "the errors at trial actually and
> substantially disadvantaged his defense so
> that he was denied fundamental fairness." Id.
> at 1261 (quoting Carrier, 477 U.S. at 494, 106
> S.Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

---

[5]     Murray v. Carrier, 477 U.S. 478 (1986).

11

In _Martinez_, the Supreme Court modified the general rule in _Coleman_[6] to expand the "cause" that may excuse a procedural default. 132 S.Ct. at 1315.

> Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim. From this it follows that, when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of _Strickland v. Washington_, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim

---

[6]    "Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'" _Maples v. Thomas_, 565 U.S. 266, 280 (2012) (citing _Coleman_, 501 U.S. at 753). The Court reasoned that, under principles of agency law, the attorney is the prisoner's agent, and therefore, the principal bears the risk of negligent conduct on the part of his agent. _Coleman_, 501 U.S. at 753-54. In _Coleman_, the alleged ineffectiveness of counsel was on appeal from an initial-review collateral proceeding, and in that proceeding the prisoner's claims had been addressed by the state habeas trial court. _Id_. at 755. However, the _Martinez_ Court addressed ineffective assistance of counsel at an initial-review collateral proceeding.

> is a substantial one, which is to say that the
> prisoner must demonstrate that the claim has
> some merit. Cf. Miller-El v. Cockrell, 537
> U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931
> (2003) (describing standards for certificates
> of appealability to issue).

Id. at 1318-19.

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if he can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and
> prejudice, there remains yet another avenue
> for him to receive consideration on the merits
> of his procedurally defaulted claim. "[I]n an
> extraordinary case, where a constitutional
> violation has probably resulted in the
> conviction of one who is actually innocent, a
> federal habeas court may grant the writ even
> in the absence of a showing of cause for the
> procedural default." Carrier, 477 U.S. at 496,
> 106 S.Ct. at 2649. "This exception is
> exceedingly narrow in scope," however, and
> requires proof of actual innocence, not just
> legal innocence. Johnson v. Alabama, 256 F.3d
> 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not

presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998)

(quoting Schlup, 513 U.S. at 324). With the rarity of such

evidence, in most cases, allegations of actual innocence are

ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the

effective assistance of counsel. That right is denied when a

defense attorney's performance falls below an objective standard of

reasonableness and thereby prejudices the defense." Yarborough v.

Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith,

539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S.

668, 687 (1984)).

> To establish deficient performance, a
> person challenging a conviction must show that
> "counsel's representation fell below an
> objective standard of reasonableness."
> [Strickland,] 466 U.S. at 688, 104 S.Ct. 2052.
> A court considering a claim of ineffective
> assistance must apply a "strong presumption"
> that counsel's representation was within the
> "wide range" of reasonable professional
> assistance. Id., at 689, 104 S.Ct. 2052. The
> challenger's burden is to show "that counsel
> made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the
> defendant by the Sixth Amendment." Id., at
> 687, 104 S.Ct. 2052.
>
> With respect to prejudice, a challenger
> must demonstrate "a reasonable probability
> that, but for counsel's unprofessional errors,
> the result of the proceeding would have been
> different. A reasonable probability is a
> probability sufficient to undermine confidence
> in the outcome." Id., at 694, 104 S.Ct. 2052.
> It is not enough "to show that the errors had

14

> some conceivable effect on the outcome of the
> proceeding." <u>Id.</u>, at 693, 104 S.Ct. 2052.
> Counsel's errors must be "so serious as to
> deprive the defendant of a fair trial, a trial
> whose result is reliable." <u>Id.</u>, at 687, 104
> S.Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's
> representation is a most deferential one."
> <u>Richter</u>, - U.S. at -, 131 S.Ct. at 788. But
> "[e]stablishing that a state court's
> application of <u>Strickland</u> was unreasonable
> under § 2254(d) is all the more difficult. The
> standards created by <u>Strickland</u> and § 2254(d)
> are both highly deferential, and when the two
> apply in tandem, review is doubly so." <u>Id.</u>
> (citations and quotation marks omitted). "The
> question is not whether a federal court
> believes the state court's determination under
> the <u>Strickland</u> standard was incorrect but
> whether that determination was unreasonable -
> a substantially higher threshold." <u>Knowles v.</u>

15

> <u>Mirzayance</u>, 556 U.S. 111, 123, 129 S.Ct. 1411,
> 1420, 173 L.Ed.2d 251 (2009) (quotation marks
> omitted). If there is "any reasonable argument
> that counsel satisfied <u>Strickland</u>'s
> deferential standard," then a federal
> court may not disturb a state-court decision denying
> the claim. <u>Richter</u>, - U.S. at -, 131 S.Ct. at
> 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014);

<u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). "In addition to

the deference to counsel's performance mandated by <u>Strickland</u>, the

AEDPA adds another layer of deference--this one to a state court's

decision--when we are considering whether to grant federal habeas

relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385

F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting

<u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>,

559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Dunbar asserts that the State's evidence was

insufficient to prove beyond a reasonable doubt that he acted with

a premeditated design to kill the victim, and the trial court erred

in denying his motion for judgment of acquittal in violation of the

Fourteenth Amendment. <u>See</u> Petition at 5-7. Dunbar argued this issue

on direct appeal in his pro se brief, <u>see</u> Resp. Ex. E at 15-18, and

the appellate court affirmed Dunbar's conviction per curiam, <u>see</u> Resp. Ex. F.[7]

If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Dunbar is not entitled to relief on the basis of this claim.

Even assuming that the state court's adjudication of this claim is not entitled to deference, Dunbar's claim fails because the State presented sufficient evidence to support Dunbar's conviction for attempted first degree murder. The Due Process Clause of the Fourteenth Amendment requires the State to prove each element of the offense charged beyond a reasonable doubt. <u>Thompson v. Nagle</u>, 118 F.3d 1442, 1448 (11th Cir. 1997) (citing <u>Jackson v. Virginia</u>, 443 U.S. 307, 314 (1979)). In reviewing the sufficiency of the evidence, "this court must presume that conflicting inferences to be drawn from the evidence were resolved by the jury

---

[7]    The State of Florida did not file a responsive brief. <u>See</u> http://onlinedocketsdca.flcourts.org, Case No. 1D08-2325 (Fla. 1st DCA).

in favor of the State." <u>Thompson</u>, 118 F.3d at 1448 (citing <u>Machin v. Wainwright</u>, 758 F.2d 1431, 1435 (11th Cir. 1985)). <u>Jackson v. Virginia</u> "provides the federal due process benchmark for evidentiary sufficiency in criminal cases." <u>Williams v. Sec'y for Dep't of Corr.</u>, 395 F. App'x 524, 525 (11th Cir. 2010) (per curiam) (citing <u>Green v. Nelson</u>, 595 F.3d 1245, 1252-53 (11th Cir. 2010)). In accordance with this authority, the relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged offense beyond a reasonable doubt. <u>Jackson</u>, 443 U.S. 319.

As previously stated, the State charged Dunbar with attempted first degree murder as follows:

> MICHAEL N. DUNBAR[,] on September 9, 2007, in the County of Duval and the State of Florida, with a premeditated design to effect the death of Nicholas Rodgers, a human being, did attempt to unlawfully kill the said Nicholas Rodgers, by shooting him, and during the commission of the aforementioned Attempted Murder in the First Degree, the said MICHAEL N. DUNBAR did carry, display, use, threaten to use, or attempt to use a firearm and did actually possess and discharge a firearm and as a result of the discharge, great bodily harm was inflicted upon any person, contrary to the provisions of Sections 782.04(1)(a), 775.087(2)(a)3 and 777.04(1), Florida Statutes.

Resp. Ex. A at 11, Information. After the State rested its case, <u>see</u> Tr. at 588, the court denied Dunbar's motion for judgment of acquittal, stating in pertinent part:

> Well, I do find that they have shown a
> prima facie case, both for attempted first
> degree murder and also find a prima facie case
> that Mr. Dunbar was responsible, and so at
> this time I would deny the motion for judgment
> of acquittal.

Id. at 590. "Where the state has produced competent evidence to

support every element of a crime, a judgment of acquittal is not

proper." Gay v. State, 607 So.2d 454, 457 (Fla. 1st DCA 1992)

(citations omitted). At trial, the court instructed the jury as

follows:

> To prove the crime of attempted first
> degree premeditated murder, the State must
> prove the following three elements beyond a
> reasonable doubt:
>
> 1. Michael N. Dunbar did some act
> intended to cause [the[8]] death of Nicholas
> Rodgers that went beyond just thinking or
> talking about it.
>
> 2. Michael N. Dunbar acted with a
> premeditated design to kill Nicholas Rodgers.
>
> 3. The act would have resulted in the
> death of Nicholas Rodgers except that someone
> prevented Michael N. Dunbar from killing
> Nicholas Rodgers or he failed to do so.
>
> A premeditated design to kill means that
> there was a conscious decision to kill. The
> decision must be present in the mind at the
> time the act was committed. The law does not
> fix the exact period of time that must pass
> between the formation of the premeditated
> intent to kill and the act. The period of must
> time -- the period of time, excuse me, must be
> long enough to allow reflection by the

---

[8]    See Resp. Ex. A at 58, Attempted Murder - First Degree
(Premeditated).

defendant. The premeditated intent must be formed before the act was committed.

The question of premeditation is a question of fact to be determined by you from the evidence. It will be sufficient proof of premeditation if the circumstances of the attempted killing and the conduct of the accused convince you beyond a reasonable doubt of the existence of premeditation at the time of the attempted killing.

Tr. at 716-17. Additionally, the court instructed the jury on the lesser-included offenses of attempted second degree murder, attempted voluntary manslaughter, and aggravated battery. See id. at 719-24.

After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Dunbar committed the crime of attempted first degree premeditated murder. Indeed, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support the conviction for attempted first degree murder. Competent evidence of the elements of the offense was introduced at trial, and no due process violation occurred. The jury was entitled to believe the State witnesses' accounts of what transpired on the day in question. Given the record, the trial court did not err in denying Dunbar's motion for judgment of acquittal; the evidence was sufficient to justify the court submitting the case to the jury;[9] and the evidence was sufficient to support the conviction for

_____

[9]     See Tr.; Resp. Ex. D at 3-12.

attempted first degree murder. Therefore, Dunbar is not entitled to habeas relief as to ground one.

## B. Ground Two

Dunbar asserts that counsel was ineffective because she failed to challenge law enforcement's investigatory stop. See Petition at 9-11. He raised the claim in his Rule 3.850 motion in state court. See Resp. Ex. H at 3-5. The court ultimately denied the post-conviction motion with respect to the claim, stating in pertinent part:

> In his first ground, the Defendant alleges that counsel was ineffective by failing to challenge the investigatory stop of the Defendant by Officer Nicholas Rodgers of the Jacksonville Sheriff's Office ("JSO"). During his trial testimony, Officer Rodgers testified that while on patrol on the evening of September 9, 2007, he observed the Defendant on foot in the middle of the road on Haines Street. (Exhibit "C," pages 229-232.)[10] He testified that he decided to stop the Defendant because he was in the middle of the road, and because when the Defendant saw his patrol vehicle he "took off" down the street, which the Officer considered suspicious. (Exhibit "C," pages 234-235.)[11] He also testified that walking in the middle of the road is a civil infraction. (Exhibit "C," page 235.) The Defendant was uncooperative with the Officer, resulting in a struggle as the Officer attempted to check the Defendant for weapons. (Exhibit "C," pages 238-243.) Officer Rodgers testified that during this altercation the Defendant got an arm free, produced a firearm, and shot the

---

[10]  See Tr. at 232, 233.

[11]  See Tr. at 234-35.

Officer in the chin. (Exhibit "C," pages 243-244.)

The Defendant argues that counsel should have challenged the validity of the investigatory stop based on the deposition testimony of JSO Officer Pearson. Officer Pearson testified at trial that he was driving in a separate patrol car in front of Officer Rodgers. (Exhibit "C," pages 307-308.) During his deposition, Officer Pearson testified that he observed a person matching the Defendant's description that night, but indicated that when he saw him he was "standing on the corner of 24th and Haines Street." (Exhibit "D.")[12] The Defendant alleges that this discrepancy regarding his location when observed by the Officers (on the corner versus in the middle of the street) should have been used to challenge the investigatory stop by Officer Rodgers and to show that Officer Rodgers did not have a well-founded suspicion that the Defendant was engaged in any criminal behavior. He alleges that had counsel raised this challenge, all of the evidence against him would have been suppressed as fruit of the poisonous tree. The Court need not reach the issue of the legality of the investigatory stop because, even assuming the stop was invalid, the Defendant thereafter engaged in an independent criminal act by shooting Officer Rodgers. The evidence of this independent crime is not subject to suppression based on an initial illegal stop. State v. White, 642 So.2d 842, 844 (Fla. 4th DCA 1994).[13] To hold otherwise, "the victim of an illegal search would have license to kill the officers involved, and the police would be deprived of protection afforded even to trespassers." Id. Therefore, even if counsel had filed a motion to suppress the evidence of the shooting, it would have been denied.  Counsel cannot be deemed ineffective

---

12    See Resp. Ex. H at 105.

13    See Tims v. State, 204 So.3d 536 (Fla. 1st DCA 2016).

> for failing to file a meritless motion. <u>See</u>
> <u>Kormondy v. State</u>, 983 So.2d 418, 430 (Fla.
> 2007); <u>Branch v. State</u>, 952 So.2d 470, 476
> (Fla. 2006); <u>Zakrzewski v. State</u>, 866 So.2d
> 688, 694 (Fla. 2003). Accordingly, the
> Defendant's first ground is denied.

<u>Id.</u> at 20-21. On Dunbar's appeal, the appellate court affirmed the trial court's denial of post-conviction relief per curiam. <u>See</u> Resp. Ex. J.

To the extent that the state appellate court affirmed the trial court's denial on the merits,[14] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Dunbar is not entitled to relief on the basis of the claim.

Moreover, even assuming the state appellate court's adjudication of the claim is not entitled to deference, Dunbar's claim nevertheless is without merit. In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong

---

[14]    In looking through the appellate court's affirmance to the trial court's "relevant rationale," this Court presumes that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S.Ct. at 1192.

presumption in favor of competence. See Anderson v. Sec'y, Fla. Dep't of Corr., 752 F.3d 881, 904 (11th Cir. 2014). The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005). Thus, Dunbar must establish that no competent attorney would have taken the action that counsel, here, chose.

Notably, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

On this record, Dunbar has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Dunbar has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had challenged the investigatory stop. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Dunbar is not entitled to federal habeas relief on ground two.

## C. Ground Three

As ground three, Dunbar asserts that counsel was ineffective because she failed to properly impeach Officer Rodgers. See Petition at 12-14. He raised the claim in his Rule 3.850 motion in state court. See Resp. Ex. H at 5-7. The court ultimately denied the post-conviction motion with respect to the claim, stating in pertinent part:

> In his second ground, the Defendant alleges that counsel was ineffective by failing to impeach Officer Rodgers at trial with the contradiction between his testimony and Officer Pearson's deposition testimony regarding the Defendant's original location on the street. The Defendant argues that pointing out this discrepancy would have discredited Officer Rodgers' testimony and the State would not have been able to prove that he was the person that shot Officer Rodgers. In light of the evidence presented against the Defendant at trial, the Court finds no reasonable probability that this type of impeachment

would have changed the outcome of the trial. Officer Rodgers identified the Defendant as the person who shot him, and testified that he was face-to-face with the Defendant prior to being shot and got a good look at him. (Exhibit "C," pages 230, 238, 247.)[15] The Defendant's cell phone was left behind at the scene of the shooting and his finger and palm prints were found on the Officer's patrol car. (Exhibit "C," pages 406-409, 431-435, 455-458 480-488.) The Defendant was located nearby after the shooting, his clothing matched the clothing description of the suspect given by Officer Rodgers immediately after the shooting, and he was suffering from a gunshot wound to his knee.[16] (Exhibit "C," pages 251-252, 310-315, 317, 328-330, 349-352, 520-523.) As the Defendant has failed to establish prejudice, his second ground is denied.

Id. at 21-22 (footnote omitted). On Dunbar's appeal, the appellate court affirmed the trial court's denial of post-conviction relief per curiam. See Resp. Ex. J.

To the extent that the state appellate court affirmed the trial court's denial on the merits,[17] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of

---

[15]    See Tr. at 230, 238, 247.

[16]    Officer Rodgers testified that he returned fire after Dunbar shot him.  See Tr. at 245.

[17]    This Court presumes that the appellate court "adopted the same reasoning" as the post-conviction court. Wilson, 138 S.Ct. at 1192.

clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Dunbar is not entitled to relief on the basis of this claim.

All that is constitutionally required is reasonably effective counsel, not perfect or error-free counsel. "Strickland does not guarantee perfect representation, only a 'reasonably competent attorney.'" Richter, 562 U.S. at 110 (quoting Strickland, 466 U.S. at 687) (internal quotation omitted). In the instant action, counsel's representation did not so undermine the proper functioning of the adversarial process that Dunbar was deprived of a fair process.[18] Notably, "there is no expectation that competent counsel will be a flawless strategist or tactician." Id. Indeed, an attorney "may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." Id.

On this record, Dunbar has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Dunbar has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if

---

[18]    See Tr. at 268-96, 303-04.

counsel had impeached Officer Rodgers in the manner Dunbar suggests. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Dunbar is not entitled to federal habeas relief on ground three.

### D. Ground Four

As ground four, Dunbar asserts that the trial court lacked subject matter jurisdiction, and the judgment therefore is a nullity because the Information omitted one or more of the essential elements of the crime of attempted first degree murder. See Petition at 16-19. He raised the claim in his petition for writ of habeas corpus and amended petition in state court. See Resp. Exs. Q; R at 1-18. The circuit court stated that Dunbar should have raised the claim in a Rule 3.850 motion, and therefore denied it as procedurally barred. See Resp. Ex. R at 19-20. The appellate court affirmed the circuit court's denial per curiam, see Resp. Ex. U, and later denied Dunbar's motion for rehearing, see Resp. Exs. V; W. Respondents argue that Dunbar did not properly present the claim in state court, and thus Dunbar's claim has not been exhausted, and therefore is procedurally barred. See Response at 32-33. On this record, the Court agrees that the claim has not been exhausted and is therefore procedurally barred since Dunbar failed to raise the claim in a procedurally correct manner. Dunbar has not shown either

cause[19] excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming that Dunbar's claim is not procedurally barred, Dunbar is not entitled to relief. The claim presents issues purely of state law not cognizable on federal habeas review. The purpose of a federal habeas proceeding is to review the lawfulness of Dunbar's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States. Coleman v. Thompson, 501 U.S. 722 (1991). Dunbar's conviction and sentence do not violate the Constitution or laws or treaties of the United States.

For a defective Information to be a cognizable claim in a federal habeas corpus action, the charging document must be so defective that it deprives the court of jurisdiction. DeBenedictis v. Wainwright, 674 F.2d 841, 842 (11th Cir. 1982) (citations omitted) ("The sufficiency of a state indictment or information is not properly the subject of federal habeas corpus relief unless the indictment or information is so deficient that the convicting court is deprived of jurisdiction."). Under Florida law, the state

---

[19] Dunbar's reliance on Martinez to establish "cause" for his procedural default of the claim, see Reply at 3-4, is misplaced. Martinez applies only to procedurally defaulted claims of ineffective assistance of trial counsel. See Chavez v. Sec'y, Fla. Dep't of Corr., 742 F.3d 940, 945 (11th Cir. 2014); Luciano v. Sec'y, Dep't of Corr., 701 F. App'x 792, 793-94 (11th Cir. 2017) (per curiam) (explaining Martinez's narrow scope).

circuit courts have jurisdiction over all felonies. See Fla. Stat. § 26.012(2)(d). Moreover, the Information in Dunbar's case named Dunbar; described the date and location of the offense; stated the statutory basis for the offense; and properly set forth the elements of attempted first degree murder. See Resp. Ex. A at 11. It therefore met the minimum requirements for invoking the jurisdiction of the state circuit court. Additionally, the Information contained the required sworn oath of the Assistant State Attorney, certifying that the allegations in the Information "are based upon facts that have been sworn to as true, and which, if true, would constitute the offense therein charged," that the prosecution is instituted "in good faith," and that the facts are based on testimony of material witnesses. Id. Such a sworn oath by the prosecutor that he received testimony under oath from the material witnesses for the offenses is sufficient pursuant to applicable Florida law. See Fla. R. Crim. P. 3.140(g).[20] Undoubtedly, the trial court had subject matter jurisdiction over

---

[20]    Florida Rule of Criminal Procedure 3.140(g) provides, in pertinent part:

> Signature, Oath, and Certification; Information. An information charging the commission of a felony shall be signed by the state attorney, or a designated assistant state attorney, under oath stating his or her good faith in instituting the prosecution and certifying that he or she has received testimony under oath from the material witness or witnesses for the offense.

Dunbar's case since the Information charged him with attempted first degree murder, a felony, in violation of Florida Statutes sections 782.04(1)(a) and 777.04(1). Notably, because the Information references Florida Statutes sections 782.04(1)(a) and 777.04(1), which detail the elements of the offense, the State provided Dunbar with sufficient notice to prepare his defense. The trial court properly instructed the jury on attempted premeditated murder. See Tr. at 716-17. Accordingly, Dunbar is not entitled to federal habeas relief on ground four.

### E. Ground Five

As ground five, Dunbar asserts that the prosecution knowingly used false evidence (audio dispatch tape)[21] and withheld favorable evidence in violation of his right to due process of law. See Petition at 21-23. He acknowledges that he has not presented the claim in state court because he was proceeding pro se and was not "aware" of the issues until he filed his federal petition. See id. at 24. Respondents argue that Dunbar did not properly present the claim in state court, and thus Dunbar's claim has not been exhausted, and therefore is procedurally barred. See Response at 34-35. On this record, the Court agrees that the claim has not been exhausted and is therefore procedurally barred since Dunbar failed

---

[21] At trial, Officer Rodgers identified state exhibit 3 as a recording of his radio transmission just after the shooting. See Tr. at 250-51. The prosecution entered the recording into evidence and played it for the jury. See id. at 251-52.

to raise the claim in a procedurally correct manner. Dunbar has not shown either cause[22] excusing the default or actual prejudice resulting from the bar. Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception. Thus, the Court need not reach the merits of the claim.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Dunbar seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Dunbar "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

---

[22]     As previously explained, Dunbar's reliance on Martinez to establish "cause" for his procedural default of the claim, see Reply at 4-5, is misplaced.

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Amended Petition (Doc. 13) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.    If Dunbar appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 6th day of June, 2018.

MARCIA MORALES HOWARD
United States District Judge

sc 5/24
c:
Michael Dunbar, FDOC #J36085
Counsel of Record